UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

JOSEPH HOLMES, as personal representative
of DANIEL LACEY, deceased,

      Plaintiff,

vs.                                                                                                 Civ. No. 10-00435 MV/GBW

THE GEO GROUP, INC., *et al.*,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Motion for Summary Judgment brought by Defendants The GEO Group, Inc., Guadalupe County Correctional Facility, and Erasmo Bravo, filed August 11, 2010. (Doc. 30). Plaintiff filed his response to the motion on September 7, 2010 (Doc. 35) and a reply in support of the motion was filed on September 27, 2010. (Doc. 39).

In Plaintiff's response to the motion, Plaintiff argued *inter alia* that the case was in its infancy and that he could not properly respond to the motion without the benefit of discovery. In light of Plaintiff's argument, this Court granted Plaintiff leave to file an amended opposition to the motion on or before February 8, 2011, which was to include any evidence that Plaintiff contends creates a genuine issue of material fact; at the time, with the exception of certain expert deadlines, the discovery deadline was February 1, 2011. (Docs. 24 & 53). The close of discovery was subsequently moved and Plaintiff requested an extension of the deadline for filing the amended opposition. (Docs. 56 & 60). The Court granted Plaintiff's request for an extension in part, extending the deadline for filing the amended opposition to February 22, 2011. (Doc. 62). Ultimately, however, Plaintiff elected not to file an amended opposition to the

motion. Accordingly, the motion is now ready to be decided based on the original briefing.

## FACTUAL BACKGROUND

This case arises out of the death of Daniel Lacey. Prior to his death, Mr. Lacey was a state inmate who was housed at the Guadalupe County Correctional Facility ("GCCF"). GCCF is operated by Defendant The GEO Group, Inc. ("GEO") and, at the relevant time, Defendant Erasmo Bravo was the Warden of the facility. Plaintiff's first amended complaint (Doc. 27), which is brought by Mr. Lacey through his personal representative, alleges that the inadequate medical care Mr. Lacey received during his incarceration eventually led to his death from cancer. Specifically, Plaintiff's first amended complaint brings claims against GEO, Wexford Health Sources, Inc. ("Wexford"), Correctional Medical Services, Inc. ("CMS"), and Erasmo Bravo, as well as Doe defendants, claiming that the care Mr. Lacey received violated his Eighth Amendment rights. It also brings claims against GEO, Wexford, CMS, and Doe defendants for medical malpractice and claims against "Defendants" for negligence.

There is no dispute that Guadalupe County contracts with the New Mexico Corrections Department ("NMCD") to house state prisoners, like Mr. Lacey, at GCCF. (Doc. 30 at p. 2 & Exs. A-B; Doc. 35 at p. 4). The contract between NMCD and Guadalupe County is hereinafter referred to as "the Amended Agreement."

As permitted under the Amended Agreement, Guadalupe County contracts with a private prison contractor, GEO, to operate GCCF. (Doc. 30 at p. 2; Doc. 35 at p. 4). Under the Amended Agreement, GEO's duty with respect to NMCD inmate medical care is to "provide appropriate space and security support." (Doc. 30 at p. 2, Ex. A & Ex. B at ¶¶ 11.0-11.1; Doc. 35 at p. 4). NMCD retains the responsibility for providing heath care services to inmates, including the provision of unimpeded access to sick call, 24-hour-per-day emergency medical

care, regular physician visits, and on-site medical staff sufficient to provide for the medical needs of the population. (Doc. 30 at p. 3, Ex. A & Ex. B at ¶¶ 11.0 & 11.2; Doc. 35 at p. 4).

NMCD, in turn, contracts with private medical contractors to provide medical care to state prisoners at GCCF.[1] (Doc. 30 at Ex. A & Ex. B at ¶¶ 11.0 & 11.2). GEO does not provide medical services at GCCF and employs no licensed medical personnel at GCCF. (Doc. 30 at Ex. A).

NMCD has a written grievance process for inmate complaints at GCCF. During the time

---

[1] This Court acknowledges that there is some ambiguity as to the precise contract that was in place between NMCD and its medical contractor for certain relevant periods. This ambiguity, however, fails to create a genuine issue of material fact for purposes of this summary judgment motion, which is not brought by the medical contractors, but is instead brought by GEO, GCCF, and Warden Bravo. The contract between NMCD and Guadalupe County requires NMCD to provide health care services through a health care contractor. (Doc. 30 at Ex. B at ¶¶ 11.0 & 11.2). Further, Warden Bravo has averred that "NMCD contracts directly with private medical contractors to provide medical services at GCCF" and that "GEO does not provide medical services at GCCF." (Doc. 30 at Ex. A). Accordingly, the absence of the precise contract in place between NMCD and its medical contractor does not create an genuine issue of material fact as to GEO's responsibilities with respect to medical care.

Moreover, even though there is ambiguity as to the precise contract in place, the parties appear to agree that Wexford was responsible for providing medical care to inmates through June 30, 2007 and that on July 1, 2007, CMS assumed responsibility for providing heath care services. Specifically, the motion for summary judgment attaches portions of a contract between NMCD and Wexford, pursuant to which Wexford is responsible for providing health care services to inmates at GCCF, the contract provides that its term is from July 1, 2004 until June 30, 2005 and may be extended for up to three additional one-year terms. (Doc. 30 at Ex. C). In their reply brief, Defendants note that "[i]t appears the contract between NMCD and Wexford was renewed for a period of two additional years and expired on June 30, 2007," at which time CMS assumed responsibility for providing heath care services; attached as an exhibit to the reply brief are portions of the contract between NMCD and CMS, the term of which commenced on July 1, 2007. (Doc. 39 at pp. 1-2 & Ex. F). Defendants do not, however, submit evidence establishing that the contract with Wexford attached to their moving papers was, in fact, extended. However, Plaintiff's first amended complaint likewise alleges that Wexford maintained a contract with NMCD to provide heath care to inmates at GCCF through July 1, 2007 and that thereafter CMS contracted with NMCD to provide health care to inmates at GCCF. (Doc. 27 at ¶¶ 5-6).

Mr. Lacey was incarcerated at GCCF in 2007, he submitted no informal complaint or formal grievance regarding any issue, medical or otherwise. (Doc. 30 at Ex. D).

  Finally, in opposing the motion for summary judgment, Plaintiff submits evidence showing that Mr. Lacey was seen by medical personnel at GCCF on June 13, 2007 regarding the symptoms he was experiencing, at which time an ultrasound was recommended but not performed; that Mr. Lacey was again seen by medical personnel at GCCF on July 3, 2007, at which time he was informed that a request for an ultrasound would be put in and that, with any luck, the ultrasound would occur within the next few weeks; that Mr. Lacey was next seen by medical personnel at GCCF on September 12, 2007, at which time it was again recommended that the ultrasound be performed; and that Mr. Lacey was once again seen by medical personnel at GCCF on October 1, 2007, at which time it was again recommended that the ultrasound be performed.[2] (Doc. 35 at Exs. 2-5). The parties submit no evidence that the ultrasound was performed.

  On October 3, 2007, a request was made by Offsite Coordinator E. Aranda (an employee of the medical contractor) to Warden Tim Hatch to allow Mr. Lacey off-site for an October 10, 2007 medical appointment, which request was approved by the Associate Warden. (Doc. 35 at Ex. 6; Doc. 39 at Ex. I). A GEO Memorandum, dated October 3, 2007 and signed by the Associate Warden and Chief of Security, indicates that Mr. Lacey was to be transported off-site by GEO/GCCF officers to his October 10, 2007 medical appointment. (Doc. 35 at Ex. 7). An affidavit of Warden Bravo submitted in connection with Defendants' reply acknowledges that

---

[2] While Plaintiff also asserts in his additional facts that Mr. Lacey repeatedly made requests to GCCF officers to be seen by medical personnel for his symptoms, Plaintiff cites no admissible evidence to support his contention that such requests were made to GEO employees. (Doc. 35 at p. 5, ¶ 3).

"GEO employees were required to approve transport for off-site medical appointments for inmates as part of GEO's contractual obligation to provide security support for NMCD's medical contractor," but states that "GEO does not 'coordinate' or 'authorize' off-site medical care for inmates." (Doc. 39 at Ex. I).

According to the first amended complaint, in October 2007, blood was finally drawn from Mr. Lacey and October 29, 2007 results from the blood work revealed both the AFP and CEA markers, indicating a strong likelihood that Mr. Lacey had cancer. (Doc. 27 at ¶¶ 19-20). On November 28, 2007, Mr. Lacey was taken off-site for a urological exam, which was conducted by Dr. Mary Ochadlik. (*Id.* at ¶ 21). On December 11, 2007, his testicle was surgically removed and a December 18, 2007 pathology report indicated the presence of cancer. (*Id.* at ¶¶ 22-23). Due to concerns that the tumor was in metastasis and that cancer would likely be present elsewhere in Mr. Lacey's body, on December 21, 2007, Dr. Ochadlik prepared a Provider Consultation Report to GCCF indicating that it was imperative that Lacey receive a colonoscopy, a CT of his chest, abdomnent and pelvis, and referral to UNMH Oncology as soon as possible. (*Id.* at ¶¶ 23-24). A CT scan was performed on January 9, 2008. (*Id.* at ¶ 24). On January 16, 2008, Mr. Lacey was diagnosed with gastric cancer at the UNMH Oncology Center, which had progressed to a stage that it was impossible for Mr. Lacey to survive. (*Id.* at ¶¶ 25-26). Due to his terminal medical condition, Mr. Lacey was paroled on January 23, 2008. (*Id.* at ¶ 27). After being released from prison, Mr. Lacey continued to receive medical treatment for his cancer, including chemotherapy and numerous surgeries, but his condition continued to deteriorate. (*Id.* at ¶ 28). Mr. Lacey died on August 12, 2009. (*Id.* at ¶ 29).

**LEGAL STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In ruling on summary judgment, the court must resolve all ambiguities and draw all factual inferences in favor of the non-moving party." *Zurich N. Am. v. Matrix Serv., Inc.,* 426 F.3d 1281, 1287 (10th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

**DISCUSSION**

**I.   GCCF**

The motion for summary judgment argues that GCCF is not a legal entity capable of being sued. While GCCF was named in the caption of the original complaint, Plaintiff subsequently filed an amended complaint, which removed GCCF as a defendant. (Docs. 1 & 27). Accordingly, the Court finds that the motion for summary judgment is moot to the extent it seeks dismissal of GCCF.

**II.   Plaintiff's § 1983 Claims Against Warden Bravo and GEO**[3]

Plaintiff's § 1983 claims allege that various Doe defendants violated Mr. Lacey's Eighth Amendment rights by failing "to timely relay Lacey's complaints to GCCF medical personnel," by failing to "provide him with reasonable and necessary medical care," and/or by denying him "access to medical treatment" and that such conduct "was consistent with and pursuant to a policy, custom and practice of . . . GEO, Wexford and CMS to ignore, neglect and/or minimize medical complaints of inmates, including Lacey." (Doc. 27 at ¶ 39). The first amended

---

[3] The parties agree that the Eighth Amendment controls Plaintiff's constitutional claims. (Doc. 35 at p. 6).

complaint also alleges that GEO, Wexford, CMS and Warden Bravo are responsible for the actions of their employees under the doctrine of *respondeat superior* and that GEO, Wexford, CMS and Warden Bravo "failed to properly train, supervise and provide adequate means and staff to monitor inmates' medical conditions" and failed "to adequately train and supervise staff in the performance of their jobs, including monitoring, evaluating and treating the medical condition[s] of inmates." (Doc. 27 at ¶¶ 42 & 44). The amended complaint further alleges that GEO, Wexford and/or CMS failed to employ a licensed medical physician to provide reasonable and necessary medical treatment. (Doc. 27 at ¶ 43).

There is no *respondeat superior* liability under 42 U.S.C. § 1983. *Porro v. Barnes*, 624 F.3d 1322, 1327 (10th Cir. 2010). "To establish a violation of § 1983 by a supervisor, as with everyone else, . . . the plaintiff must establish a deliberate, intentional act on the part of the defendant to violate [the plaintiff's legal] rights." *Id.* at 1327-28 (internal quotations omitted); *see also Dodds v. Richardson*, 614 F.3d 1185, 1194-95 (10th Cir. 2010) (recognizing that even before *Iqbal*, to impose § 1983 liability on a supervisor, a plaintiff was required to demonstrate not only that the supervisor's subordinates violated the Constitution, but also had to demonstrate an affirmative link between the supervisor and the violation).[4]

Likewise, in *Monell v. New York City Department of Social Services,* 436 U.S. 658, 691,

---

[4] As the Court finds that Plaintiff has not submitted evidence sufficient to satisfy the § 1983 liability standards prior to *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), the Court need not consider *Iqbal*'s stricter liability standard. *See generally Dodds*, 614 F.3d at 1197-1202 (discussing post-*Iqbal* liability standards and holding that at least the following theory of liability survived *Iqbal*: a plaintiff may succeed in a § 1983 suit against a defendant-supervisor by demonstrating the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that caused the complained of constitutional harm and, in doing so, acted with the state of mind requisite to establish the alleged constitutional deprivation).

7

694 (1978), the Supreme Court held that a municipality cannot be held liable under 42 U.S.C. § 1983 merely because it employs a tortfeasor; rather, to be liable, the municipality must have a policy or custom that caused the constitutional tort. While *Monell* itself applied to municipal governments and not private entities acting under color of state law, it is now settled that *Monell* also extends to private defendants sued under § 1983. *See Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 (10th Cir.2003). Accordingly, in order to hold GEO liable for the alleged unconstitutional acts of its employees, Plaintiff must show both that one of its employees committed a constitutional violation and that a GEO policy or custom was the moving force behind the constitutional deprivation. *Myers v. Okla. Cnty. Bd. of Cnty. Comm'rs*, 151 F.3d 1313, 1316 (10th Cir.1998).

  To establish that an employee or agent of GEO violated Mr. Lacey's Eighth Amendment rights, plaintiff must provide evidence that a GEO employee or agent acted with deliberate indifference to Mr. Lacey's serious medical needs. *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir.), *cert. denied*, 130 S. Ct. 259 (2009); *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005). The test for deliberate indifference has both an objective and subjective component. *Martinez*, 563 F.3d at 1088; *Mata*, 427 F.3d at 751. The objective component requires that the harm suffered be sufficiently serious to be cognizable under the Cruel and Unusual Punishment Clause of the Eighth Amendment. *Martinez*, 563 F.3d at 1088; *see also Mata*, 427 F.3d at 751. The subjective prong of the deliberate indifference test, which requires the plaintiff to present evidence of the prison official's culpable state of mind, "is satisfied if the official 'knows of and disregards an excessive risk to inmate heath or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference.'" *Mata*, 427 F.3d at 751 (quoting *Farmer v. Brennan*,

511 U.S. 825, 837 (1994)); *see also Martinez*, 563 F.3d at 1089. "A prison medical professional who serves solely . . . as a gatekeeper for other medical personnel capable of treating the condition may be held liable under the deliberate indifference standard if she delays or refuses to fulfill that gatekeeper role." *Mata*, 427 F.3d at 751 (internal quotations omitted).

This Court finds that both Warden Bravo and GEO are entitled to summary judgment as to Plaintiff's § 1983 claims. As to Warden Bravo, Plaintiff has submitted no evidence of any deliberate, intentional act on his part to violate Mr. Lacey's Eighth Amendment rights. There is no evidence of personal participation; no evidence that Warden Bravo promulgated or implemented any policy that caused the complained constitutional harm; and no evidence of any affirmative link between the alleged violation of Mr. Lacey's constitutional rights and Warden Bravo. In fact, in response to the motion for summary judgment, Plaintiff does not present any evidence with respect to Warden Bravo, but instead asserts that the allegations in the complaint are sufficient to state a claim. (Doc. 35 at pp. 7-8). However, the instant motion is not a motion to dismiss, but a motion for summary judgment. Accordingly, Plaintiff cannot simply rely on allegations in the complaint, but instead must support his assertion that facts are genuinely disputed by citing specific evidence in the record. Fed. R. Civ. Proc. 56. As noted above, this Court gave Plaintiff an opportunity to file an amended opposition to the motion, which was to include any evidence that Plaintiff contends creates a genuine issue of material fact, but Plaintiff declined to do so. As Plaintiff has submitted no evidence of any personal involvement by Warden Bravo in the alleged constitutional violations, the Court finds that Warden Bravo is entitled to summary judgment as to Plaintiff's § 1983 claims.[5]

---

[5] Per paragraph 7 of Plaintiff's first amended complaint, Plaintiff's § 1983 claims are brought against Warden Bravo in his individual capacity. (Doc. 27 at ¶ 7).

This Court likewise finds that GEO is entitled to summary judgment in its favor as to Plaintiff's § 1983 claims.  First, Plaintiff has not come forward with evidence sufficient to establish that an employee or agent of GEO violated Mr. Lacey's constitutional rights.  As a preliminary matter, Plaintiff has yet to even identify a specific agent or employee of GEO that allegedly violated his constitutional rights.  Absent identification of specific individuals, Plaintiff cannot establish that the individuals disregarded an excessive risk to Mr. Lacey's health or safety.  Moreover, in his opposition to the summary judgment motion, Plaintiff submitted no evidence that any employee or agent of GEO failed to timely relay Mr. Lacey's complaints to medical personnel or otherwise denied or impeded Mr. Lacey's access to medical treatment, nor did Plaintiff submit evidence that any GEO employee or agent was aware of Mr. Lacey's deteriorating health.

While Plaintiff makes a number of allegations regarding the adequacy of the medical care Mr. Lacey received, it is undisputed that GEO did not provide the medical care—rather, its duty with respect to NMCD inmate medical care was to provide appropriate space and security support.  (Doc. 30 at pp. 2-3, Ex. A & Ex. B at ¶¶ 11.0-11.2; Doc. 35 at p. 4).  In opposing summary judgment, Plaintiff argues that GEO employees or agents "had a significant role arranging and/or authorizing the off-site medical visits" and that they failed in such duties. (Doc. 35 at p. 9).  However, the record on summary judgment is to the contrary.  While the record indicates that GEO employees were required to approve transport for off-site medical appointments as part of GEO's duty to provide security support, the summary judgment record shows only one request that was made by medical personnel to GEO to transport Mr. Lacey off-site for a medical appointment, which request was apparently approved the same day it was made.  (Doc. 35 at Exs. 6-7; Doc. 39 at Ex. I).  There is thus no evidence that any GEO

employee impeded Mr. Lacey's access to off-site care.

Finally, the record shows that Mr. Lacey never filed an inmate grievance that would have alerted GEO that Mr. Lacey had concerns regarding the medical care he was receiving while incarcerated at GCCF. (Doc. 30 at Ex. D). While it is true, as Plaintiff argues, that the absence of an administrative grievance "is not undisputable proof that Defendant GEO and/or its employees or agents could not have acted with deliberate indifference" (Doc. 35 at p. 10), what Plaintiff fails to acknowledge is that he has a duty to come forward with evidence that creates a genuine issue of material fact as to whether GEO employees acted with deliberate indifference. Plaintiff has not done this. While the Court was sympathetic to Plaintiff's argument that he needed an opportunity to conduct discovery in order to identify the individuals involved in the alleged violations and to gather evidence to support his allegations, it gave Plaintiff this opportunity by granting Plaintiff leave to file an amended opposition. Plaintiff elected not to amend his opposition. Accordingly, as there is no evidence that could support a finding that an employee or agent of GEO acted with deliberate indifference to Mr. Lacey's serious medical needs, GEO is entitled to summary judgment as to Plaintiff's § 1983 claims on the basis that Plaintiff cannot establish that one of GEO's employees or agents violated Mr. Lacey's constitutional rights.

The Court further finds that GEO is likewise entitled to summary judgment as to Plaintiff's § 1983 claims for a second independent reason, namely: Plaintiff has come forward with no evidence that a GEO policy or custom was the moving force behind the alleged violation of Mr. Lacey's Eighth Amendment rights.

**III. Plaintiff's Medical Malpractice Claims Against GEO**

The Court finds that GEO is also entitled to summary judgment as to Plaintiff's medical malpractice claims. Plaintiff's medical malpractice claims are based on numerous alleged inadequacies in the medical care Mr. Lacey received while incarcerated at GCCF. (Doc. 27 at ¶ 56). Plaintiff contends that GEO is responsible for the actions of its employees—who were physicians, physician's assistants, nurses, technicians or other persons under the control and/or supervision of physicians—under the doctrine of *respondeat superior*. (Doc. 27 at ¶ 57). The undisputed facts, however, establish that GEO did not employ any medical personnel and had no role in the provision of medical care apart from providing appropriate space and security. (Doc. 30 at Ex. A & Ex. B at ¶¶ 11.0-11.2; Doc. 39 at Ex. I). GEO's obligation to provide space and security is insufficient to render GEO vicariously liable for the negligence of medical personnel under contract with the NMCD. *Cf.* UJI 13-402 NMRA (principal is liable for the act of its agent when agent was acting within the scope of his or her agency and principal had the right to control the manner in which the work was to be performed); *Keith v. ManorCare, Inc.*, 147 N.M. 209, 216, 218 P.3d 1257, 1264 (N.M. Ct. App.), *cert. granted*, 147 N.M. 452, 224 P.3d 1257 (2009) (listing favors that inform the determination of whether an employer has the right to control an individual for the purpose of establishing vicarious liability, including (1) whether the employer is entitled to control the manner and means of the individual's performance, (2) the method of compensating the individual, (3) whether the employer has furnished equipment for the individual, and (4) whether the employer has the power to terminate the individual without cause).

Moreover, as noted above, while GEO was required to approve transport for off-site medical appointments as part of its duty to provide security support, the record does not support

Plaintiff's contention that this requirement gave GEO "significant control of the manner in which treatment was performed." (Doc. 35 at p. 12). To the contrary, the summary judgment record evidences only one request to transport Mr. Lacey off-site for medical care, which request was made by medical personnel and was approved by GEO the same day. (Doc. 35 at Exs. 6-7; Doc. 39 at Ex. I).

### IV.  Plaintiff's Negligence Claims Against Warden Bravo and GEO

The Court finds that Warden Bravo and GEO are also entitled to summary judgment as to Plaintiff's state law negligence claims. A negligence claim requires the existence of a duty from a defendant to a plaintiff and a breach of that duty with the breach being the proximate cause of a plaintiff's damages. *Herrera v. Quality Pontiac*, 134 N.M. 43, 47-48, 73 P.3d 181, 185-86 (N.M. 2003). Here, it is undisputed that neither GEO nor Warden Bravo was responsible for providing medical diagnoses and treatment to Mr. Lacey. GEO's obligation as to medical care was to provide space and security for medical care. (Doc. 30 at pp. 2-3, Ex. A & Ex. B at ¶¶ 11.0-11.2; Doc. 35 at p. 4). Plaintiff, however, has not argued that the space or security provided by GEO was inadequate.

In opposing the summary judgment motion, Plaintiff does not argue that either GEO or Warden Bravo were responsible for alleged inadequacies in the medical care actually provided to Mr. Lacey. Instead, Plaintiff first argues that these defendants breached a duty of ordinary care owed to Mr. Lacey as Mr. Lacey made repeated requests for medical treatment that were denied, restricted, or delayed. (Doc. 35 at p. 12). As discussed above, however, Plaintiff submitted no evidence that Warden Bravo or any other GEO employee or agent failed to timely relay Mr. Lacey's complaints to medical personnel or otherwise denied or impeded Mr. Lacey's access to medical treatment. Plaintiff's remaining argument is that Warden Bravo or GEO

"coordinated, and more importantly, authorized off-site medical treatment for inmates, including Plaintiff." (Doc. 35 at p. 12). However, as discussed above, while GEO employees were required to approve transport for off-site medical appointments, they were not responsible for coordinating or authorizing off-site medical care. (Doc. 39 at Ex. I). More significantly, there is no evidence that GEO failed to approve requests for off-site care; to the contrary, the only evidence in the record of a request for off-site medical care indicates that the request was approved by GEO the same day it was made. (Doc. 35, Exs. 6-7). Accordingly, as there is insufficient evidence to support a finding that either Warden Bravo or GEO breached a duty of care owed to Mr. Lacey, this Court finds that they are entitled to summary judgment as to Plaintiff's state law negligence claims.

## CONCLUSION

**IT IS THEREFORE ORDERED** that summary judgment is **GRANTED** in favor of The GEO Group, Inc. and Erasmo Bravo.

**IT IS FURTHER ORDERED** that the Motion for Summary Judgment is **DENIED** as moot to the extent it seeks summary judgment as to the claims brought against the Guadalupe County Correctional Facility.

DATED this 31st day of March, 2011.

_____
**MARTHA VÁZQUEZ**
**United States District Judge**